LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAFAEL ALDAPE,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

                Plaintiff,

             v.

OCINOMLED, LTD.,
        d/b/a DELMONICO RESTAURANT
BALARINI RESTAURANT CORP.,
        d/b/a ARNO RISTORANTE
FIVE "M" CORP.,
        d/b/a DK RESTAURANT
50/50 RESTAURANT CORP.,
        d/b/a SCALETTA RISTORANTE
MILAN LICUL, BRANKO TURCINOVIC,
OMER GRGUREV, and FERDO GRGUREV

                Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Plaintiff, RAFAEL ALDAPE ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, OCINOMLED, LTD., BALARINI RESTAURANT CORP., FIVE "M" CORP., 50/50 RESTAURANT CORP., (collectively, "Corporate Defendants"), MILAN LICUL, BRANKO TURCINOVIC, OMER GRGUREV, and FERDO GRGUREV (collectively,

"Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.       Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants (1) unpaid wages, including overtime compensation, due to time shaving, (3) unpaid minimum wage due to an invalid tip credit, (3) illegally retained gratuities, (4) liquidated damages and (5) attorneys' fees and costs.

2.       Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, due to time shaving, (2) unpaid minimum wage due to invalid tip credit, (3) illegally retained gratuities, (4) unpaid spread-of-hours premium, (5) liquidated damages, (6) statutory penalties and (7) attorneys' fees and costs.

3.       Plaintiff further alleges that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Plaintiff is entitled to recover from Defendants for creating and fostering a hostile work environment based on Plaintiff's national origin: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys' fees and costs.

4.       Plaintiff further alleges that, pursuant to New York City Human Rights Law Administrative Code of City of NY § 8-107 ("NYCHRL"), Plaintiff is entitled to recover from Defendants for creating and fostering a hostile work environment based on Plaintiff's national origin: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys' fees and costs.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

7.     Plaintiff RAFAEL ALDAPE is a resident of Queens County, New York.

8.     Corporate Defendant  OCINOMLED, LTD. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 56 Beaver Street, New York, NY 10004.

9.     Corporate Defendant BALARINI RESTAURANT CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 141 West 38th Street, New York, NY 10018.

10.     Corporate Defendant FIVE "M" CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 207 West 36th Street, New York, NY 10018.

11.     Corporate Defendant 50/50 RESTAURANT CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 50 West 77th Street, New York, NY 10024.

12.     Individual Defendant MILAN LICUL is a principal and executive officer of Corporate Defendants and has operational control of Defendants' Restaurants. Individual Defendant exercises the power to (and also delegate to managers and supervisors the power to) (i) fire and hire employees, (ii) supervise and control employee work schedules, (iii) determine the

rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class Members at Defendants' Restaurants. Individual Defendant has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs and Class Members.

13.     Individual Defendant BRANKO TURCINOVIC is a principal and executive officer of Corporate Defendants and has operational control of Defendants' Restaurants. Individual Defendant exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs and Class Members at Defendants' Restaurants. Individual Defendant ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Defendants' Restaurants are operating efficiently and profitably.

14.     Individual Defendant OMER GRGUREV is a principal and executive officer of Corporate Defendant OCINOMLED, LTD and Corporate Defendant 50 50 RESTAURANT CORP. Individual Defendant exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs and Class Members at Defendants' Restaurants. Individual Defendant ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Defendants' Restaurants are operating efficiently and profitably.

15.     Individual Defendant FERDO GRGUREV is a principal and executive officer of Corporate Defendant OCINOMLED, LTD and Corporate Defendant 50 50 RESTAURANT CORP. Individual Defendant exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs and Class Members at Defendants' Restaurants. Individual Defendant ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Defendants' Restaurants are operating efficiently and profitably.

16.     Defendants operate a restaurant enterprise under the trade name "Delmonico's Restaurant Group." Such food services enterprise is comprised of four restaurants, of which include:

(a) Delmonico's Restaurant – 56 Beaver Street, New York, NY 10004;

(b) Arno Ristorante – 141 West 38th Street, New York, NY 10018;

(c) DK Restaurant – 207 West 36th Street, New York, NY 10018; and

(d) Scaletta Ristorante – 50 West 77th Street, New York, NY 10024.

(collectively, "Defendants' Restaurants")

17.     Defendants operate the above restaurants as a single integrated enterprise. Specifically, Defendants' Restaurants are engaged in related activities, share common ownership and have a common business purpose.

(a) Defendants' Restaurants are engaged in the same business of operating restaurants in New York City.

(b) Defendants′ Restaurants are commonly owned and operated by Individual Defendants.

    (i)    Each Individual Defendant is a 25% shareholder of Corporate Defendant OCINOMLED, LTD. See **Exhibit A** ¶¶ 15, 45 (Complaint) and **Exhibit B** (Answer) at ¶¶ 3, 5, 19.

    (ii)    Each Individual Defendant is a 25% shareholder of Corporate Defendant 50 50 RESTAURANT CORP. See **Exhibit B** (Answer) at ¶¶ 19, 29.

    (iii)    Individual Defendants MILAN LICUL and BRANKO TURCINOVIC are listed as principals for Corporate Defendant FIVE "M" CORP. See **Exhibit C** (liquor license)

    (iv)    Individual Defendants MILAN LICUL and BRANKO TURCINOVIC are listed as principals for Corporate Defendant BALARINI RESTAURANT CORP. See **Exhibit D** (liquor license).

(c) Defendants' Restaurants maintain centralized labor relations and human resources and implement the same wage and hour policies and procedures established by Defendants.

(d) Supplies and employees are interchangeable among Defendants' Restaurants.

18.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

19.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

**<u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>**

20.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including bussers, cooks, line cooks, food preparers, cashiers, counter persons, dishwashers, porters, cleaning persons and delivery persons) employed by Defendants at Defendants' Restaurants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

21.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their lawful wages for all hours worked, including those in excess of forty (40) hours per workweek. A subclass of tipped employees has a claim for unpaid minimum wage, including those from an improperly deducted tip credit, and a claim for illegally retained tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

22.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**<u>RULE 23 CLASS ALLEGATIONS – NEW YORK</u>**

23.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including bussers, cooks, line cooks, food preparers, cashiers, counter persons, dishwashers, porters, cleaning persons and delivery

persons) employed by Defendants at Defendants' Restaurants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

24.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff RAFAEL ALDAPE is a member of both the class and the Tipped subclass.

26.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay them their wages for all hours worked, including those worked in excess of forty (40) per workweek, due to Defendants' policy of time-shaving, (ii) failing to pay them the spread of hours premium for workdays exceeding ten (10) hours, (iii) failing to provide proper wage statements per requirements of the New York Labor Law, and (iv) failing to provide wage and hour notices per requirements of the New York Labor

8

Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27.    With regard to Plaintiff RAFAEL ALDAPE, and the Tipped Subclass, Defendants also failed to pay the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

28.    With regard to a subclass of non-exempt tipped employees employed by Defendants, Defendants also retained and failed to remit the tips earned from deliveries.

29.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c)    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d)    Whether Defendants properly notified Plaintiff and the Class Members of their regular hourly rate and overtime rate;

e)    Whether Defendants paid Plaintiff and the Class Members the statutory minimum wage;

f)    Whether Defendants paid Plaintiff and the Class Members overtime wages at a proper rate that is at least one-and-one-half times the regular rate of pay;

g)    Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h)    Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

i)    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

j)    Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

k) Whether Defendants established an invalid tip pooling arrangement by illegally including managers in the tip pool;

l) Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiff and the Tipped Subclass did not agree to;

m) Whether Defendants retained any portion of the gratuities for their tipped employees;

n) Whether Defendants paid Plaintiff and the Class Members the spread of hours premium for workdays that exceeded ten (10) hours;

o) Whether Defendants provided wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL;

p) Whether Defendants provided wage and hour notices to Plaintiff and the Class Members per requirements of the NYLL; and

q) Whether Defendants paid Plaintiff and Class members the New York State spread of hours premium when their workdays exceeded ten hours.

## STATEMENT OF FACTS

34. From in or about January 2018 until on or about April 15, 2019, Plaintiff RAFAEL ALDAPE was employed by Defendants to work as a busser at Defendants' Delmonico's Restaurant location located at 56 Beaver Street, New York, NY 10004.

35. From the beginning of his employment with Defendants until the end of his employment, Plaintiff RAFAEL ALDAPE was scheduled to work five (5) days per week. Plaintiff would be assigned to work one of three shifts: (i) from 11:00 a.m. to 9:00 p.m., (ii) from 4:00 p.m. to 11:00 p.m., or (iii) from 6:00 p.m. to 1:00 a.m. and regularly worked from forty-one (41) hours to forty-four (44) hours per week depending on need.

36. From the beginning of his employment with Defendants until in or around December 2018, Plaintiff RAFAEL ALDAPE was paid at the tipped hourly rate of $8.65 From in

or about January 2019 until the end of his employment with Defendants, Plaintiff was paid at the tipped hourly rate of $10.00.

37.     Plaintiff RAFAEL ALDAPE claims that Defendants illegally retained gratuities because they were subject to a tip pooling scheme where managers Corrado Goglia and Kristijan [Last Name Unknown, hereinafter, "LNU"] participated in the tip pool. Corrado Goglia and Kristijan (LNU) are managers because they hire and fire, set schedules, open and close the restaurant, count money in the cash registry, and they track and divide the tips. As managers, they are also paid on a salary basis, not compensated at the tipped minimum wage rate, and they do not serve customers.

38.     Furthermore, throughout his employment, Plaintiff witnessed other waiters giving cash tips to Corrado Goglia and Kristijan (LNU), and when Plaintiff asked about what was going on, they would ignore him or tell him "it's a separate matter" or "this has nothing to do with you." Plaintiff noted that this specifically happened on busy nights and that subsequently, his tips were similar on busy nights and slow nights.

39.     Plaintiff RAFAEL ALDAPE was not properly compensated for all the hours he worked due to Defendants' policy of time-shaving. Specifically, Defendants indiscriminately and automatically deducted two (2) hours for meal breaks on days which Plaintiff worked from 4:00 p.m. to 11:00 p.m., whether Plaintiff was able to take those breaks or not, instead of tracking actual meal breaks with their readily available clock-in/out system. While on his meal break, Plaintiff RAFAEL ALDAPE was still "on-call" and required to work through his meal breaks and as a result, the meal breaks were not free and clear breaks. Therefore, Defendants reduced Plaintiff RAFAEL ALDAPE's compensable hours by approximately four (4) or six (6) hours per workweek.

40.     Plaintiff RAFAEL ALDAPE, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff RAFAEL ALDAPE, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

41.     Plaintiff RAFAEL ALDAPE, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were required to engage more than 20% of their working time in non-tipped related activities, including cleaning the restaurant, sweeping and mopping the restaurant, putting away chairs, performing porter duties and performing expeditor duties. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

42.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members their proper wages for all hours worked, including those in excess of forty (40) per workweek, due to Defendants' policy of time-shaving, in violation of the FLSA and NYLL.

43.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage to and the proper overtime rate thereof for hours worked over forty (40) in a workweek, Plaintiff, a subclass of FLSA Collective Plaintiffs, and Tipped Subclass members, in violation of the FLSA and NYLL. Defendants were not entitled to claim any tip credits under the FLSA or the NYLL.

44.    Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities earned by Plaintiff, a subclass of FLSA Collective Plaintiffs and Tipped Subclass members in violation of the FLSA and the NYLL.

45.    Defendants knowingly and willfully operated their business with a policy of not paying the spread of hours premium to Plaintiff and Class Members for each workday exceeding ten (10) hours, in violation of the NYLL.

46.    Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and annually thereafter. Plaintiff and Class members did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

47.    Plaintiff and Class members received wage statements that were not in compliance with the New York Labor Law. Defendants were required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Plaintiff and Class members also received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiff and Class members.

48.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

49.    During the course of Plaintiff RAFAEL ALDAPE's employment with Defendants, Defendants permitted a hostile work environment to develop based on Plaintiff's national origin.

50.    The general managers of Delmonico's Restaurant Location, Corrado Goglia and Kristijan (LNU), routinely mistreated bussers of Hispanic nationality and gave waiters of Croatian nationality preferential treatment.

51.    During Plaintiff's employment with Defendants, despite their being approximately fifteen (15) waiters, all of the waiters were of Croatian descent.

52.    Plaintiff notes that the General Managers Corrado Goglia and Kristijan (LNU) would routinely verbally abuse bussers of Hispanic nationality. General Managers Corrado Goglia and Kristijan (LNU) would scream at Hispanic busser if they were seen eating or on their phones. However, the individuals of Croatian nationality were not subject to his hostility if they were caught eating or checking their phones. Only the Hispanic employees were subject to the verbal harassment.

53.    Plaintiff was subsequently terminated by General Managers Corrado Goglia, who informed Plaintiff that he was fired because the "the waiters are not happy with you, so I have to fire you." It is clear that this was a pretextual reason for terminating Plaintiff's employment.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

54.    Plaintiff realleges and reavers Paragraphs 1 through 52 of this Class and Collective Action Complaint as if fully set forth herein.

55.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

56.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

58.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages for all hours worked, including those in excess of forty (40) per workweek, due to Defendants policy of time-shaving.

59.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and a subclass of FLSA Collective Plaintiffs the proper minimum wage due to an invalid tip credit. Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees.

60.     At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting an illegal tip-pooling scheme in which management retained a portion of the tips and included managers in the tip pool.

61.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

63.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

64.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

65.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage and overtime wages, unpaid wages due to an invalid tip credit, plus an equal amount as liquidated damages.

66.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

67.     Plaintiff realleges and reavers Paragraphs 1 through 65 of this Class and Collective Action Complaint as if fully set forth herein.

68.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

69.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them proper wages in the lawful amount for hours worked due to time-shaving.

70.     Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them the proper minimum wage as Defendants were not entitled to claim any tip credits.

71.     Defendants willfully violated Plaintiff and the Class members' rights by instituting an illegal tip-pooling scheme in which Class members were required to share tips with management. In doing so, Defendants willfully deprived Plaintiffs and Class members of their lawfully earned wages.

72.     Defendants willfully violated Plaintiff and the Class members' rights by failing to pay them their spread of hours premiums as required under the NYLL.

73.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members as required under the New York Labor Law. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked

and their proper compensation, including tips illegally withheld from Plaintiffs and Class members.

74.     Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members as required under the New York Labor Law.

75.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages due to time-shaving, unpaid wages due to an invalid tip credit, damages representing disgorgement of illegally retained tips, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>

76.     Plaintiff realleges and reavers Paragraphs 1 through 74 of this Class and Collective Action Complaint as if fully set forth herein.

77.     At all relevant times, Plaintiff was an employee within the meaning of the NYSHRL.

78.     At all relevant times, the Corporate Defendants, as a joint enterprise, were and continue to be an employer within the meaning of the NYSHRL.

79.     At all relevant times, the Corporate Defendants had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYSHRL.

80.     Section 296(1)(a) of the NYHRL prohibits employers from discriminating against an employee because of race "in terms, conditions or privileges of employment."

81.    Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

82.    Defendants violated the NYSHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

83.    This hostile work environment was created and fostered through pervasive and regular verbal abuse and harassment in the form of comments and behavior directed towards Plaintiff.

84.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

85.    Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it. Specifically, the General Managers were the individuals aiding and abetting the hostile work environment.  Indeed, rather than address the abuse against Plaintiff, Defendants permitted the General Managers to terminate him on a pretextual basis.

86.    The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYHRL.

87.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

88.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an

amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYHRL.

**COUNT IV**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**

89.     Plaintiff realleges and reavers Paragraphs 1 through 88 of this Class and Collective Action Complaint as if fully set forth herein.

90.     At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

91.     At all relevant times, the Corporate Defendants as a joint enterprise had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYCHRL.

92.     Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of race "in terms, conditions or privileges of employment."

93.     Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

94.     Defendants violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

95.     This hostile work environment was created and fostered through pervasive and regular verbal abuse and harassment in the form of comments and behavior directed towards Plaintiff.

96.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

97.    Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it. Specifically, the General Managers were the individuals aiding and abetting the hostile work environment.  Indeed, rather than address the abuse against Plaintiff, Defendants permitted the General Managers to terminate him on a pretextual basis.

98.    The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 8-107(1)(a)(3) of the NYCHRL.

99.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

100.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.      An award of unpaid wages due under the FLSA and NYLL due to Defendants' policy of time-shaving;

d.      An award of unpaid wages due under the FLSA and NYLL due to Defendants' claiming an invalid tip credit;

e.      An award of unpaid spread of hours premium due under the NYLL;

f.      An award equal to the amount of the improperly retained tips withheld by Defendants;

g.      An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

h.      An award of liquidated damages as a result of Defendants' willful failure to pay the proper overtime wages and minimum wage, pursuant to the FLSA;

i.      An award of liquidated damages as a result of Defendants' willful failure to pay the proper overtime wages, minimum wage, and spread of hours premium, pursuant to the NYLL;

j.      An award of back pay and compensatory damages due under the NYSHRL and the NYCHRL;

k.      An award of punitive damages due under the the NYSHRL and NYCHRL;

l.      An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

m.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.      Designation of this action as a class action pursuant to F.R.C.P. 23;

o.    Designation of Plaintiff as Representative of the Class; and

p.    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 2, 2021                    Respectfully submitted,

By:    _/s/ C.K. Lee_
       C.K. Lee, Esq.

       LEE LITIGATION GROUP, PLLC
       C.K. Lee (CL 4086)
       Anne Seelig (AS 3976)
       148 West 24th Street, Eighth Floor
       New York, NY 10011
       Tel.: (212) 465-1188
       Fax: (212) 465-1181

       _Attorneys for Plaintiff, FLSA Collective
       Plaintiffs and the Class_